## W. R. MOORE V. PARIS OIL AND COTTON COMPANY.

### No. 468.

**1.  Contract—Damages for Breach—Fact Case.**—Where defendant's contract provides, that he shall furnish a stated amount of feed for certain cattle, for a stipulated period of time and at a fixed price, he is not liable for refusing to furnish it where the other party does not provide cattle to be fed, but wishes the feed in order that he may resell it at an advanced market price.

**2.  Same—Construction of Contracts.**—The proper construction of a contract must always depend on the intention of the parties, to be collected in each particular case from the agreement itself, and from the subject matter to which it relates.

APPEAL from Lamar.    Tried below before Hon. E. D. McCLELLAN.

*Hill & Birmingham* and *H. D. McDonald*, for appellant.—The court erred in its findings of fact and law, and in rendering judgment for the defendant, because the said judgment is contrary to the law and facts in this, viz:  The court finds, that the Hall & Beall contract is the basis of plaintiff's claim, as he had purchased a half interest therein; then finds that plaintiff violated the contract in not feeding cattle at Paris, Texas, when the written contract with Hall & Beall nowhere binds them to feed cattle at Paris, Texas; and also finds, that plaintiff violated said contract in not furnishing cattle to be fed at Paris or elsewhere, when the said Hall & Beall contract nowhere obligates them to furnish cattle, but binds the oil company to furnish feed

for 1000 head, the amount thus designated being the measure of feed to be furnished. Appellee is estopped from denying its liability for said feed, because it waived any rights to claim that appellant should apply the feed to cattle to be fed at Paris or otherwise, if such right existed, as it shipped feed to plaintiff's orders to various points, irrespective of plaintiff furnishing cattle, till hulls advanced above the contract price. Randon v. Barton, 4 Texas, 289; Duncan v. McMahon, 18 Texas, 597.

*Lightfoot, Denton & Long*, for appellee.—There are two things to be especially considered in construing a contract: (1) the situation of the parties at the time the contract was entered into; (2) the property which constitutes the subject matter of the contract, the meaning and purpose of the parties thereto to be determined from a rational interpretation of the whole contract; the intent of the law being to interpret contracts so as to find in them a meaning which is honest, sensible, and just, without doing violence to the expressions of the parties or making a new contract for them. Pars. on Con., 7 ed., 526–529; Haldeman v. Chambers, 19 Texas, 45; Rose v. Railway, 31 Texas, 59.

RAINEY, ASSOCIATE JUSTICE.—At a former day of this term we reversed and rendered the judgment of the court below, for appellant, our holding being, in effect, that the failure of appellant to furnish cattle to be fed was no excuse for the failure of the appellee to furnish the feed mentioned in the contract. After further consideration, we are now of the opinion that our former disposition of the case was erroneous.

As our views of the proper construction to be given the contract, which is the basis of the suit, have changed, it follows, that our conclusions of fact are erroneous, in that appellant is not entitled to damages, and it is necessary to find additional facts which were not considered to be material under our former holding. We therefore conclude, that the findings of fact of the court below were supported by the evidence adduced upon the trial, and the same are adopted as the conclusions of fact of this court, which are as follows:

"1. The court finds as a conclusion of fact, that on or about October 5, 1891, Hall & Beall entered into a contract with the Paris Oil and Cotton Company, in substance as follows:

" 'We have this day sold to Messrs. Hall & Beall, of Colorado City, Texas, sufficient hulls and meal to feed 1000 head of cattle, subject to the conditions hereinafter stated. Said cattle are to be put on feed not later than October 20, 1891. The price of hulls is to be $2.50 per ton, and meal $16.00 per ton, in bulk at the mill. The said company agrees to sack the meal in 100-pound sacks, and to loan said sacks to said Hall & Beall. The said Hall & Beall are to return, in good order and condition, all sacks loaned them for handling the meal; all sacks that are torn or damaged or rendered useless, or lost, will be charged to

said Hall & Beall, at cost. The feeding of the cattle is to extend from October 20th, as above, for a period of about 100 days, making the aggregate quantity of feed sold to be about 1000 tons of hulls and meal, of sufficient quantity to last as above.

" 'In the event of any accident happening to our plant which will prevent our supplying seed as above, or of its destruction by fire or otherwise, this contract is to cease and be at an end. Payments for seed furnished are to be made on the first day of each month.

" 'It is understood, that said oil company is to hold first lien on cattle for any feed bills.

" 'Dated this 5th day of October, 1891.

" 'PARIS OIL AND COTTON COMPANY,

" 'J. J. CULBERTSON, Mgr.

" 'Accepted: HALL & BEALL.'

"2. That when said contract was made, Hall & Beall had prepared to feed said cattle at Paris, Texas, near the defendant's mill, and had arranged their pens, troughs, feed pens, etc., for that purpose.

"3. That some time in November, 1891, the plaintiff, W. R. Moore, purchased the one-half interest of John T. Beall in said contract, and also in the pens, etc., and by agreement with defendant, it was understood and agreed that plaintiff should carry out said contract as to one-half the cattle mentioned, under the terms and stipulations as set out in said contract; and that both parties undertook to carry out the same, the cattle to be fed in Paris, Texas.

"4. That plaintiff afterwards came to Paris, but failed to put in any cattle, or to feed any cattle under said contract. That defendant consented that plaintiff might feed them elsewhere if desired, and that it would ship the feed to any point where plaintiff might want to feed cattle; but plaintiff did not provide any cattle to feed under the contract, or offer to carry out the provisions of the contract on his part, but arranged to sell the feed and demanded that the cotton seed hulls be shipped to other parties to whom he had contracted them; and the defendant declined to ship them to such other parties, but offered to furnish the feed to plaintiff at any time to feed cattle under the terms of the contract."

By the terms of the contract, the oil company was to furnish "sufficient hulls and meal to feed 1000 head of cattle," subject to certain conditions. The cattle were to be put on feed at a certain time, and were to continue for a period of about one hundred days. The record shows, that Moore did not furnish any cattle to feed; nor did he desire the feed for the purpose of feeding cattle, but as the hulls had advanced in price, he desired them for the purpose of speculation. Under this state of case, the question is, was the appellant damaged by the refusal of appellee to furnish hulls to him? The proper construction of contracts of this character is often attended with extreme difficulty. The proper rule to govern is stated by Mr. Parsons in his

work on Contracts, page 527, thus: "The decision must always depend upon the intention of the parties, to be collected in each particular case from the agreement itself, and from the subject matter to which it relates. It can not depend on any formal arrangement of the words, but in the reason and sense of the thing as it is to be collected from the whole contract;" and again, on page 529, he says: "It may be indeed safely said that this question in each particular case will be determined by inferring, with as much certainty as the case permits, the meaning and purpose of the parties from a rational interpretation of the whole contract."

In Haldeman v. Chambers, 19 Texas, 45, Mr. Wheeler, Judge, in stating the rule, says: "All the stipulations which go to constitute the entire substance of the contract between the parties are to be taken, considered, and construed together, so that every part may be interpreted by the whole; and the writing is to be read by the surrounding circumstances, in order more properly to understand the intent and meaning of the parties."

It follows, that only such damages arising from a breach of a contract are recoverable as were reasonably within the contemplation of the parties at the time the contract was entered into. Interpreting the contract in the light of these rules, we think it fair to hold, from the evidence, as well as from the terms of the contract, that the only damages that were contemplated by the parties were such as might arise in case cattle were provided by appellant to be fed, and appellee failed to furnish the feed as specified in the contract. It is evident from the terms of the contract and the evidence adduced on the trial, that at the time of making the contract Hall & Beall intended to feed cattle, as was also the intention of Moore when he bought Beall's half-interest in the contract. We do not think it a proper subject of inquiry whether or not appellee would have contracted to sell the seed for any other purpose, or under any other circumstances. The contract stipulating that the hulls and meal were to be furnished to feed cattle, we should not conjecture that the appellee would have contracted to sell, regardless of what disposition appellant might make of the feed. Then what is the measure of damages in such a case? It is well settled, as contended for by appellant, that the measure of damages for the breach of a sale of a chattel when the price agreed upon is not advanced, and where there is no special condition entering into the contract, is the difference between the price agreed upon to be paid and the value of the chattel at the time it should have been delivered. Randon v. Burton, 4 Texas, 289; Duncan v. McMahon, 18 Texas, 597.

This measure is not applicable in this case. The sale in this case having been made for a particular purpose, a different rule prevails. The damages must be measured by the injury done to appellant by the failure to furnish for that purpose. The oil company did not fail or refuse to furnish feed for the purpose of feeding cattle, nor did any

injury accrue to appellant by reason of not securing feed for that purpose, as he provided no cattle to be fed; he was therefore not damaged in a manner within the reasonable contemplation of the parties when the contract was entered into; nor was there any alteration of the contract by the parties that would require a different construction.

When the price of hulls advanced, Moore exercised the privilege of changing his intention to feed cattle, and went to speculating on the feed. We therefore think, that the privilege should be accorded appellee to refuse to furnish the feed for any purpose other than for the purpose of feeding cattle—the purpose contracted for. Under the circumstances, no damages resulted to appellant, and he is not entitled to recover.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered November 28, 1895.

Writ of error refused.

LIGHTFOOT, Chief Justice, did not sit in this case.