NICHOLLS, J.
The plaintiff alleged: That on January 10, 1906, it entered into a contract with Eugene G. Taylor, of the parish of St. Mary, in which he sold and agreed to deliver, and petitioner purchased and agreed to receive from the said Taylor, 20,000 barrels, 40 gallons to the barrel, of fuel' oil of merchantable quality, with the privilege of 15,000 more barrels, at the price and for the consideration of 36 cents per barrel, which said oil it was agreed should be delivered in system cars f. o. b. Mermentau, Egan, or Jennings, between November 1, 1906, and January 15, 1907, and to be shipped as required and directed by petitioner.
All of which conditions would more fully appear by reference to a duplicate copy of said contract annexed hereto for reference and marked “Exhibit A.” That shortly after entering upon said contract with said Taylor, and before any delivery of oil had been made under said contract, the said E. C. Taylor transferred and assigned the said contract to the Evangeline Oil Company, a foreign corporation doing business at Jennings, in the parish of Calcasieu. That after the assignment of said contract by the said Taylor to the Evangeline Oil Company, said company notified petitioner by letter that it was the *964 assignee of said contract, accepted the said contract and made it its own, and agreed to furnish the oil and make the deliverance of the said 35,000 barrels of oil under the terms of said contract, and notified petitioner to make all payments for said oil to it,'and not to Taylor.
That by reason of the assignment by Taylor and the acceptance by the Evangeline Oil Company, the company assumed all of the obligations of said contract and obligated itself to deliver the full 35,000 barrels of oil sold under said contract. That long before the expiration of such contract, and shortly after the beginning of deliverance of oil thereunder, it notified the Evangeline Oil Company, the assignee of the contract, that it would want and expect said company to deliver the full 35,000 barrels of oil called for in said contract.
That the Evangeline Oil Company began deliveries under said contract on or about November 5, 1906, and continued delivering oil under said contract down to about January 10, 1907, and delivered under said contract 24,753 barrels of oil, leaving yet due petitioner under said contract 10,257 barrels of said 011. That it had by letter, by telephone, and through E. C. Taylor, before and since the expiration of the date fixed in said contract for the delivery of said oil, demanded of said company to make full deliveries under said contract, and had given it shipping instructions for delivery of all oil under said contract. That it had in every manner and in every particular put said company in default under its said contract, and ordered it to deliver said oil, notifying said company at the time that it was ready to perform its part of the contract and pay for the oil as fast as delivered, but that the company failed to deliver 10,257 barrels of said oil, and now refused to make said delivery, without assigning any reason therefor.
That since the expiration of the date fixed in said contract for the final delivery of the oil, and before filing this suit, it had, through its attorney, again put the company in default by demanding a delivery of the oil due under the contract, which was likewise refused.
That it had at all times complied with its obligations under the contract, and at all times been willing to receive and pay for said oil, and had given specific and repeated instructions as to delivery. That it had at no time been -in default under its obligation.
That at the date of the violation of this said contract, and the refusal to deliver the oil thereunder, and prior to that time, the price of oil had materially increased and was worth at the date for the completion of the delivery under said contract, and át the date of the refusal to deliver said oil, GO cents per barrel- more than the price at which petitioner purchased said oil.
That therefore by reason of the violation of said contract and the failure and refusal of said company to deliver said oil petitioner had suffered damages in the sum of 60 cents per barrel, or $6,154.20, the difference in the price at which said oil was purchased and its value at the time of the violation of the contract. That under the terms of said contract and under the law in the premises it was entitled to this sum from the defendant company as damages for its violation of the contract. In view of the premises, it prayed for service and citation hereof upon the Evangeline Oil Company, that it have judgment against and recover of and from the Evangeline Oil Company the sum of $6,154.20, the damages suffered by petitioner on account of the violation of said contract by said company in failing and refusing to deliver the full amount of oil called for therein, and with 5 per cent, per annum interest thereon from January 22, 1907, the date at which said company refused to deliver, said oil, until paid in full.
It prayed for all such orders, decrees, reme *966 dies, and relief as the nature of the ease might require and law and equity permit.
The defendant answered. It admitted that on January 10, 1906, the plaintiff entered into a contract with Eugene C. Taylor, whereby certain oil was agreed to be sold by Taylor to the plaintiff, and that deliveries thereof were to be made as is stated in plaintiff’s petition ; but it was shown that, as to the amount of oil that was to be delivered under said contract, the interpretation given same in plaintiff’s petition was incorrect, as would hereafter be shown.
(1) It admitted that, after the contract was made with the said Taylor, he (Taylor) did assign and set over the contract to defendant, the Evangeline Oil Company, and it assumed the obligations resting on Taylor by virtue of the terms of the written agreement. It admitted that it was given notice by the plaintiff that it (the plaintiff) would need the whole of the 35,000 barrels of oil claimed by the plaintiff to have been contracted for.
(2) It admitted that it (the defendant) delivered to the plaintiff under contract 24,752.99 barrels of oil; that it (the defendant) delivered to the plaintiff under said contract. It (the defendant) admitted that it had demanded of it the delivery of the full 35,000 barrels of oil, and that the defendant had refused to comply with said demand; the particular character of the demand and the causes and reasons for said refusal being hereinafter stated. That other and further than has been hereinabove admitted it (the defendant) denied the allegations contained in plaintiff’s original petition, and in this connection it sho-wed the following facts:
(3) That at the time of the making of the contract between the plaintiff and Taylor, it (the plaintiff) -was the owner of a certain sugar plantation on which was grown sugarcane ; that it controlled certain machinery and apparatus used by it to grind and pre-, pare for market, the produce coming from said plantation, to do which required the use of petroleum oil as fuel; that said petroleum oil so contracted for by it was contemplated to be used to furnish the necessary fuel to run its plant and take off and prepare for market the crop to be grown on said plantation during the year 1906; that while the amount of oil to be sold was named in said contract as being 20,000 barrels, with the privilege of 15,000 more, the specification of this amount was intended to be and was but a mere estimate of the oil that would be required for the purpose for which same was being bought, and neither Taylor nor defendant to whom the contract was assigned were ever under any obligation to deliver to the plaintiff more oil than was required for this particular purpose; that the amount of oil that was furnished was more than sufficient to meet the requirements of plaintiff’s plantation, and this defendant did furnish oil to the plant in quantities larger than were requisite to do and perform the services for which this oil was bought. Wherefore defendant says that plaintiff has suffered no damages, and should in no event have a recovery herein.
(4)Defendant showed: That, as has been before stated, the naming of the amount of oil that was to be furnished was but an estimate of what would be required to furnish fuel for the purposes named, but in no event was the contract subject to a .construction which would place an obligation on defendant to deliver oil in excess of 20,000 barrels. The reading of the contract is that the defendant was “to receive and pay for twenty thousand, with the privilege of fifteen thous- and more barrels, of 42 gallons each, of fuel oil,” from which it appeared, and the fact was here alleged to be, that the plaintiff was never under any obligation to take any amount in excess of 20,000 barrels, and that, as a consequence, there was no obliga *968 tion on the part of Taylor or defendant, as the assignee of Taylor, to deliver more than 20,000 barrels. That as to the claim made by plaintiff that it contracted for any oil in excess of 20,000 barrels, it was shown that there was no reciprocal consent between the buyer and the seller as to the thing sold, and for this reason there was no binding contract resting on Taylor or his assignee to deliver this amount, or any amount over and above 20,000 barrels, because of the fact that the plaintiff was in no sense bound to take the oil in excess of 20,000 barrels.
(5) Defendant showed: That in no event was it ever under any obligation to deliver to plaintiff more than 20,000 barrels of oil, for the further reason that the price agreed by the plaintiff to be paid for the 20,000 barrels of oil under the terms of the contract was the fair .and reasonable market value of the oil at the time the contract was made, and that it (the plaintiff) paid nothing whatever- in the way of a consideration for the privilege now asserted by it, to claim from the plaintiff the said additional 15,000 barrels of oil. That in so far as this amount of oil was concerned the contract, if subject to the interpretation as to the amount named by the plaintiff, is and was still nudum pactum and of no force and effect.
That by virtue of the terms of the contract herein sued upon, it was provided that the oil to be delivered thereunder should be placed in oil cars and delivered free on board cars at either the stations of Mermentau, Jennings, or Egan, in the state of Louisiana. That it was contemplated 'at the time of the making of the contract that sufficient cars would be procured from the railway company in which to transport the oil that was being sold to the place of its destination. That it was then known to the contracting parties and was within the contemplation of the parties that this oil should go from either of these stations to the plantation then so owned by the plaintiff, for the use of which, as it had before stated, the oil was being sold. That although diligent effort was made to procure cars within which to transport the oil in such quantities as the necessities of the business of the plantation required, these efforts were unavailing, and that, for the mutual advantage and profit of the plaintiff and defendant, they did, on or about December 8, 1906, enter into an agreement whereby the terms of the contract as originally made were altered to the extent that defendant was given the right to make deliveries of the oil contracted to plaintiff through a pipe line running through the Jennings oil field to Plaquemine, and hence by barges to the plantation of the plaintiff, where oil was to be used. That in making this change in the contract, plaintiff agreed to pay the additional transportation charge required on account of the change in the method of delivery; the price therein and thereby agreed to be paid for such oil as might be so delivered being 59 cents per barrel delivered into the tanks of plaintiff through the pipe line. That this proposition was made by defendant to plaintiff in writing, and was by said plaintiff accepted, and for a valuable 'consideration passing from one to the other it became a binding contract between said plaintiff and defendant, and that thereby defendant was given the right or privilege to deliver whatever oil it was under obligation to deliver to plaintiff either into railway cars or through the pipe line. That notwithstanding the fact that defendant had the right to deliver such oil as it was under obligation to deliver through the pipe line, plaintiff demanded that it deliver the amount claimed to be owing to it by defendant into railway cars to be transported to other and different plantations than that for which it was originally intended, which the defendant refused to do.
That, as had been before stated, the addi *970 tional amount of oil demanded by plaintiff was not required by it in the conduct of its business on the plantation that the oil contracted for was to be used by it. That plaintiff, on account of the enhanced value of oil, sought to speculate on defendant, and contracted to sell to other and different parties, individuals, and corporations an amount of oil claimed by it to be owing to it by defendant, and in the carrying out of this attempted speculation gave directions to defendant to ship and transport through cars, the amount of oil claimed, to certain other plantations owned by parties other than plaintiff, to wit, to the Raceland plantation, and to what is known as the Elm Hall plantation, situated in the state of Louisiana.
That it was not responsible for oil to be delivered through defendant’s pipe line to these plantations named — that is, the Race-land and Elm Hall plantations — but that, notwithstanding this fact, and notwithstanding the fact that the plaintiff had agreed that whatever oil was owing to it might be transported through pipe lines, it demanded the shipping of same in railway cars to the other places above named. Thát no demand was made by plaintiff for the delivery of the oil claimed by it, over and above what was delivered through pipe lines, as it (defendant) had a right to deliver, if it was under any obligation to deliver more, but, on the contrary, the demand of plaintiff was that it (defendant) should make deliveries only through railway cars to the places so named.
That on account of the change made in the contract it was under no obligation whatever to comply with the demand of the plaintiff to make the deliveries directed by it to be made. That it was provided in. the original contract made, the terms of which in this regard remained at all times in force, that there should be no damage accruing to either party in case deliveries might be prevented on account of fires, strikes, unavoidable delays, or accidents. That it was furthermore provided that in case of nondelivery, from whatever cause, the damages that might be recoverable by plaintiff should be based upon and limited to the difference in the cost of other fuel; it being provided that the purchaser of the oil should adopt the most economical method of meeting the deficiency, and that it should give full particulars and prompt notice to the seller.
That in inserting this provision in the contract, it was contemplated between the buyer and seller that the oil contracted to plaintiff was, as aforesaid, to be used to furnish fuel to run the machinery of plaintiff on this particular plantation, then owned and being conducted by it. That it was not intended that plaintiff should be furnished oil for any other purpose than to supply the necessities of the business on this particular plantation, and the agreement was that, if the seller should fail to furnish sufficient oil to conduct operations on his plantation, it should be liable to plaintiff only for such damages as should be actually sustained, and that plaintiff should’ adopt any and all means necessary and requisite to reduce and keep to the minimum the damages accruing.
That, as a matter of fact, more oil was furnished to plaintiff than was required in the conduct of this particular business for which the oil was sold, and that it (plaintiff) has suffered no damages whatever. That by virtue of the terms of the contract, plaintiff was not entitled to recover any damages whatever from it on account of the failure of making deliveries charged against it, and that the defendant was not indebted to plaintiff in any sum whatsoever.
It prayed that judgment in its favor and against plaintiff be entered, rejecting the plaintiff’s demand.
Plaintiff filed a plea to the following effect: That the defendant company is estopped and precluded by its own act from urging, as it *972 does the construction and defense, for this: First. 'That defendant has at all times recognized in the plaintiff a right to demand and receive the extra 15,000 barrels of oil called for in the contract. That after being notified by plaintiff that it (plaintiff) would require the full 35,000 barrels, it continued to deliver, without opposition or protest, oil under said contract, and delivered a portion of the 15,000 barrels which it now contends there was no obligation on its part to deliver. That having recognized plaintiff’s right to demand this extra 15,000 barrels, and having begun to fulfill that portion of the contract, and having delivered oil with full knowledge of all the facts before it, the contract became, if not already, binding upon all parties, and defendant in .this case is forever estopped and precluded from urging or showing that the contract was in its inception as to the 15,000 barrels a nudum pactum and without consideration, if such was the ease — which is specially denied. Second. Without in any manner admitting that there was a subsequent contract modifying the manner of delivering said oil, the rebuttal of which plaintiff will properly show on trial, and without attempting to reply thereto herein, plaintiff showed that this defendant was specially es-topped and precluded from urging the right to exact railroad deliveries by plaintiff and is estopped and precluded from urging that the oil was sold for any specially designated plantation or place, and precluded from urging that defendant was in any manner concerned with the destination of said oil after it left the points named in the contract, Jennings, Egan, and Mermentau: First, by reason of the fact that defendant had at all times protested and contended that its deliveries were made, and its liabilities ceased when the oil was delivered on board cars; and, second, because defendant had, up to the very last shipment made, consigned said oil to persons other than plaintiff company and by railroad, and was by reason thereof estopped and precluded from urging want of authority in the plaintiff company to order deliveries otherwise than by water and elsewhere than to its own plantation — all of which estoppels plaintiff specially pleads in bar of the construction and defense of said contract set up by defendant. Wherefore it prayed that this estoppel be maintained and for all costs.
The district court rendered judgment in favor of plaintiff against defendant for the sum of $3,996.33, with legal interest thereon from January 22, 1907, until paid in full, being 39 cents per barrel for 10,247 barrels of oil, which is admittedly the amount not delivered of the 35,000 barrels stipulated iu the contract and admittedly the difference between the contract price and the price of date January 22, 1907; this being the amount of damages due for the violation of the contract sued on.
Defendant has appealed.
Opinion.
The contract which the plaintiff referred to in his petition was as follows:
“This contract, made this nineteenth day of January, 1906, between E O. Taylor, party of the first part, seller, and the Adeline Sugar Factory Company, Ltd., party of the second part, purchaser, witnesseth:
“That E. O. Taylor hereby sells and agrees to deliver, and the party of the second part hereby buys and agrees to receive and pay for, 20 M, with privileges of 15 M more, barrels (o'f 42 gallons each) of fuel oil of merchantable quality, settled and free from water, at the price of thirty-six cents per bbl., subject to the further terms hereof, as follows:
“The times, places and amounts of deliveries to be as follows: The above oil to be shipped as required as hereinafter specified 20 or 35 M f. o. b. Mermentau, Egan or Jennings, barrels to be delivered in System cars between the first day of November and the fifteenth day of January, 1907.
“Payments shall be made in cash or its equivalent upon each delivery.
“In case of fires, strikes or unavoidable delays or accidents occurring to either party hereto, the suffering party shall have option of suspending deliveries herein required for a reasonable time without incurring liabilities for damages by reason of such delay. In the event of *974 nondelivery or delayed delivery, all damages recoverable shall be based upon and limited to the difference in cost of other fuel, and the purchaser must adopt the most economical method of meeting the deficiency and give full particulars and prompt notice to the seller.
“The seller reserves the right to make deliveries by railroad or other means, provided that such other method does not entail greater expense to the purchaser.
“In the event of accident, such as fires or breakage of machinery of party of the second part or destruction of oil in storage at Jennings, the undelivered part of this contract to become null and void.
“AA'itness our hands in duplicate, this date as above written.”
The plaintiff claims: That under its contract with defendant it had the legal right to demand from it delivery of 35,000 barrels of oil; that it had in fact delivered between November 5, 1906, down to about January 10, 1907, 24,753 barrels, leaving yet due 10,250 barrels; that at the date of the violation of the contract and the refusal o'f the defendant to make delivery as it should have done, and prior thereto, the price of oii had materially increased, and was worth at the date for the completion of the delivery under the contract and at the date of the refusal to deliver said oil 60 cents per barrel more than the price at which petitioner pm-chased said oil; that therefore, by reason of the violation of said contract and the failure and the refusal of said company to deliver said 011, it had suffered damages in the sum of 00 cents per barrel, or $6,154.30, the difference in the price at which said oil was purchased and its value at the time of the violation of the contract; and that under the terms of the contract and under the law it was entitled to this sum from defendant company as damages for violation of the contract. Plaintiff does not specify in what maimer he suffered damages. Planiol, vol. 2, § 247, p. 87, says:
“L’indemnité doit représente! aussi exactement que possible le dommage réel subi pour le créancier. Ce dommage peut se composer les deux éléments distincts qui sont ainsi rappelés dans l’art. 1149; d’une part la perte faite e’est &. dire I’appauvrissement subi .par le partrimoine du créancier; d’une part le gain manqué. La distinction était deja, faite par les romains et il est d’usage d’appeler le premier de ces deux éléments damnum emergens et second lucrum cessans.”
On page 82, § 228, the same author says:
“Nécessité d’un dommage. Cette seconde condition est d’évidence. Le créancier ne peut obtenir d’indemnité que s’il est démontré que l’inexécution ou le retard dans l’exécution de l’obligation lui a causé un dommage. Sans celui, de quoi se plaindrait-il? Sans intérét pas d’action. C’est pour cette raison que 1’art. 1147 dit que ‘Le débiteur est condamné s’il y a lieu.’ ”
After quoting from Planiol as above copied, defendant says:
“Plaintiff is restricted by the contract to damages arising only on certain conditions and circumstances and to the species of damages arising from actual loss — perte faite or damnum emergens. He can bring no suit for a different cause of action or for damages of another kind or species. AVken the contract was.offered, it showed on its face that under its terms and conditions plaintiff’s cause of action declared on was at variance with and antagonistic to the stipulation as to damages in said contract. ‘Until damaged, no action for damages could arise.’ ”
Defendant cites Culliman v. Standard Light & Po. Co. (Tex. Civ. App.) 65 S. W. 689; Brawley v. U. S., 96 U. S. 168, 24 L. Ed. 622; Moore v. Paris Oil & Cotton Co., 9 Tex. Civ. App. 27, 29 S. W. 821; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Callmeyer v. Mayor of N. Y., 83 N. Y. 118.
Defendant contends: That the fact was, and the evidence shows, that, at the time of making the contract between the plaintiff and Taylor, the plaintiff was the owner of a certain plantation on which was grown sugar cane; that it controlled certain machinery and apparatus used by it to grind and prepare for market the produce coming from said plantation, to do which required the use of petroleum oil as fuel; that said petroleum oil so contracted for by it was contemplated to be used to furnish the necessary f,uel to run its plant and take off and prepare for market the crop to be grown on said planta *976 tion during the year 1906; that while the amount of oil was named in said contract as being 20,000 barrels, with the privilege of 15,000 more, the specification of this amount was intended to be and was but an estimate of the oil that would be required for the purpose for which same was being bought, and neither Taylor nor defendant was ever under any obligation to deliver to the plaintiff more oil than was required for this particular purpose; that the amount of oil that was furnished was more than sufficient to meet the requirements of plaintiff’s plantation, and defendant did furnish oil to the plaintiff in quantities larger than were requisite to do and perform the services for which this oil was bought — therefore plaintiff had suffered no damage, and should in no event have a recovery herein. It maintains that it did not sell the oil to the plaintiff to be used by it for speculative purposes, as it was seeking to do.
Defendant offered parol evidence to establish this defense by showing all the facts and circumstances surrounding the parties at the time of the existence of the contract and to explain the nature of the subject to which it referred. Plaintiff resisted the introduction of any evidence which would in any way vary or contradict, enlarge, restrict, or explain the contract, contending that the contract spoke for itself.
The court allowed the testimony to be introduced, and plaintiff reserved a bill of exceptions. The correctness of that ruling meets us at the threshold of the case. We think there was no error in the ruling. That question has been several times submitted to this court for decision and has been answered in favor of the right to admit testimony for consideration by the court. See Bayley v. Denny, 26 La. Ann. 257; Campbell v. Short, 35 La. Ann. 447; Rivers v. Oaklawn Sugar Co., 52 La. Ann. 762, 27 South. 118; Bagley v. Rose Hill Sugar Co., 111 La. 250, 35 South. 539.
The same view of the rule of evidence on the subject was expressed by the Supreme Court of Missouri in Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, 84 S. W. 76, in which that court, after mentioning the rule that parol testimony could not be heard to add to or to change a contract, used the following language:
“Along with this general rule, however, a rule of interpretation is equally well settled that the writing or contract should he read in the light of surrounding circumstances, in order the more perfectly to understand and explain the intent and meaning of the parties. Williams v. Railroad Co., 153 Mo., loc. cit. 534, 54 S. W. 689. Thus in Ellis v. Harrison, 104 Mo., loc. cit. 279, 16 S. W. 200, this court said: ‘The object of interpretation always is, or should be, to reach the actual intention of the parties. We mean, of course, that intention as expressed in the writing they employ to portray it, and consistent with the latter. When the subject-matter to which such' a writing refers is not entirely definite and clear, it is permissible and obviously just to receive in evidence a description of the circumstances of its execution, that the court may be placed as near as may be in the situation of the contracting parties, with a view the better to judge in what sense the language used was probably intended by them.’ Swett v. Shumway, 102 Mass. 265, 3 Am. Rep. 371; Keller v. Webb, 125 Mass. 88, 28 Am. Rep. 209. ‘Putting a construction upon a document means ascertaining the meaning of the signs or words made upon it and their relation to facts. * * * In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers or may have been intended to refer, or which identifies any person or thing mentioned in it.’ Stephens Dig. Law of Evidence, art. 91, p. 146; Carter v. Poster, 145 Mo. 392, 47 S. W. 6.”
See, also, Moore v. Paris Oil & Cotton Co., 9 Tex. Civ. App. 27, 29 S. W. 821.
The matter of introduction of testimony being disposed of, the next question is whether the testimony adduced sustains the defendant in his contention.
There can be no dispute as to the fact that at the time of the contract, the plaintiff owned a plantation in the parish of St. Mary, and that it was engaged in the growing of crops of sugar cane and in the man *978 ufaeturing of sugar therefrom, and that for the purposes of such manufacture it needed and used oil as fuel, nor that the oil covered by the contract was contracted for by the plaintiff for that purpose. Taylor, as a witness on the stand, gave the following testimony :
“Q. Was it not to take the crop grown that year? A. Yes, sir; it was sold for that purpose. Q. It was sold to take off that crop? A. Yes, sir. Q. The sugar crop of 1906 was taken off about these dates? A. Yes, sir.”
The contract does not state that it was bought for the use of the Adeline Sugar Factory and the taking off of this crop; but, in the light of the surrounding facts and circumstances, there can be no doubt as to that fact. The form of the contract itself shows that it was based upon an estimate as to what the plantation would require. Up to 20,000barrels the owners of the place entertained no doubt as to the needs of the place. The contract, so far as that quantity was concerned, was absolute and fixed. Beyond that, the situation was uncertain; more might possibly be required to meet that contingency. Plaintiff received and was granted the privilege of calling for an additional quantity of 15,000 barrels. Whether that privilege would be exercised was left entirely for the future to determine; the excess over 20,000 to be called for being evidently the increased quantity which might be required for taking off the crop over the estimate. If it became manifest from crop conditions later on that it would not fall short of expectations, none of the additional number of barrels would be asked for.
Everything connected with this contract goes to show that the plaintiff and the defendant were dealing with each other in respect to the same, from the standpoint of the requirements of the Adeline Company at its factory in St. Mary parish, and as a manufacturer of sugar, and not a buyer and seller of oil. The delivery of oil started with the' commencement of grinding at the plantation. The deliveries were all made for the plantation as long as the factory needed the oil. The extent of the deliveries was-regulated by its needs and the capacity of its tanks to receive the oil. In some of the letters exchanged between the parties, the defendant was informed that plaintiff was running short of oil, and to ship. In others, it was informed that the plantation was in a position to then receive a certain number of barrels, and to ship. On December 27, 1906, the plaintiff wrote to the defendant company:
“We have so far received 11,793 bbls. of oil. Please let us know when yqu think you can deliver the balance of contract, as we shall need the whole 35,000 barrels.”
This is the first information, so far as we have found in the transcript, in which any reference was made to any more oil than the 20,000 barrels, provided for in the contract, and in this letter defendant is informed that the plaintiff will “need” the whole 35.000 barrels, which was not the fact, as a letter of the plaintiff to the defendant of* January 7, 1907, shows that the whole of the 15.000 barrels above the 20,000 were in excess of the requirements of the plantation. The plaintiff company as a sugar manufacturing company obtained from this defendant all the oil which it needed for the crop of 1906. It suffered no loss as a factory by reason of any failure to have the full supply of oil it required. It was not called upon, by reason of any failure on the part of the defendant to deliver 35,000 barrels, to go into the market to make purchases of oil, or to acquire it in any other way. It did not have to expend a dollar of its own to enable it to carry on its operations. If it was damaged, it was not from an actual loss by a diminishment of its assets, but a loss from a failure to make more through a speculation on prices. If it could recover damages at all from the defendant, it would be from a loss *980 sustained from that standpoint. If the defendant was required under its contract to deliver 35,000 barrels of oil, and failed to do so, the measure of the damages due by defendant would not be governed by the general rules of law as to the measure of damages; but under the measure of damages specially provided for between the parties under the contract, it was evidently limited to the dif- - ference of cost of other fuel required to meet the deficiency in the amount which it needed to carry to completion its operations for the year 1906, and, there having been no such deficiency, defendant is not responsible to plaintiff for any damages. We do not think the damages claimed by plaintiff' were damages in contemplation of the parties at' the. time of the contract. Plaintiff urges that defendant is estopped from contending that it was not required, under the circumstances of this case, to deliver more than 20,000 barrels of oil under the contract, for the reason that it did in fact deliver more than that quantity. We find no ground for applying the doctrine of estoppel as a result of that circumstance. It would be necessary for plaintiff, in order to claim an estoppel, to allege and establish that it had suffered an injury from some act of the defendant. This the plaintiff has not done.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be set aside, annulled, avoided, and reversed, that plaintiff’s demand be rejected, and its suit dismissed, with costs.