GULF REFINING CO. v. PEGUES MERCANTILE CO.

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1914. Rehearing Denied April 1, 1914.)

1. APPEAL AND ERROR (§ 743*)—BRIEFS—ASSIGNMENTS OF ERROR—REFERENCE TO MOTION FOR NEW TRIAL.

The requirement of rule 25 for Courts of Civil Appeals (142 S. W. xii) that the assignments of error must refer to that part of the motion for new trial in which the error is complained of was repealed by Rev. St. 1911, art. 1612, as amended by Acts 33d Leg. c. 136, providing that, where a motion for a new trial has been filed, the assignments therein shall constitute the assignments of error, and need not be repeated by the filing of assignments; and, while this amendment does not affect the rules relating to the method of briefing assignments, consideration of an assignment would not be denied, though neither it nor the statement referred to the paragraph of the motion, where pages of the transcript were referred to which pages contained the motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

2. SALES (§ 72*)—CONSTRUCTION—QUANTITY.

A contract for the sale of oil and gasoline to a company engaged in the retail business to supply its local trade provided for the sale of stipulated quantities of each or such quantity thereof as the buyer might require during 12 months for its own consumption. The seller supplied the oil and gasoline needed for the buyer's own use and its local trade; but the buyer demanded the balance of the stipulated quantities, intending to sell it as a speculation to dealers outside its local trade. *Held*, that it did not appear that the balance of the stipulated quantities was required for the buyer's own consumption, and hence it was not entitled thereto.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 197–202; Dec. Dig. § 72.*]

Appeal from Zavala County Court; H. O. Stubbs, Judge.

Action by the Pegues Mercantile Company against the Gulf Refining Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

D. Edward Greer, of Beaumont, G. B. Fenley, of Uvalde, M. L. Harkey, of Crystal City, and Claude Lawrence, of Uvalde, for appellant. Wm. H. Davis, of Crystal City, and John D. Hartman, of San Antonio, for appellee.

CARL, J. This suit originated in the justice's court, precinct No. 3, of Zavala county, Tex., where the plaintiff obtained a judgment, whence it was appealed to the county court of that county, and there the plaintiff below again prevailed. The Gulf Refining Company has appealed to this court.

The controversy grows out of a contract made between the parties, the material parts of which, so far as we are concerned, are as follows: "This contract made and entered into this 15th day of January, 1912, between the Gulf Refining Company of Port Arthur, Texas, first party, and Pegues Merc. Co., of Crystal City, Texas, second party, witnesseth: That first party sells and agrees to deliver to second party, and second party agrees to purchase and receive from first party, during the period of twelve months, commencing Jany. 15, 1912, 5,088 gallons of Sunburst oil at 9 cts. per gallon, 3,816 gallons of stove gasoline at 14 cts. per gallon, 1,272 gallons of engine naphtha at 10 cts. per gallon, or such quantity of the above products as second party may require during that time for its own consumption."

The Pegues Mercantile Company claimed that from January 15, 1912, to December 30, 1912, it had ordered and used only 3,173 gallons of Sunburst oil under the contract and 1,060 gallons of gasoline. No naphtha was used, and no claim made on account of that part of the contract. The claim was based on 2,915 gallons of Sunburst oil and 2,756 gallons of gasoline, which it is claimed the Gulf Refining Company refused to furnish, and the damage is laid at the difference between the contract price for same and the market price at the time the contract expired, amounting to $197.69, the exact amount of the judgment rendered.

[1] Appellee objects to the consideration of appellant's assignments, because they do not refer to the paragraphs of the motion for a new trial, and because the statement does not contain a reference to a motion for a new trial having been filed. But the page of the transcript is referred to, and an inspection of those pages shows that it is the motion for a new trial. Among other cases, Fahey v. Benedetti, 161 S. W. 896, decided by this court, is cited, in which it was held that a ground of insufficiency of evidence not embraced in the motion for new trial could not be assigned as error; also that assignments not briefed in accordance with the rules need not be considered. We did not hold that absence of reference to motion for new trial in both assignment and statement would alone be sufficient to justify us in refusing to consider the assignment, but merely called attention to these defects existing under rules applicable before amendment of article 1612.

Article 1612, as amended by Acts 33d Leg. (chapter 136, p. 276), repeals that part of rule 25 (142 S. W. xii) requiring that the assignment refer to paragraph of motion for new trial in which the question was raised. Conn. v. Rosamond, 161 S. W. 76; Texas Co. v. Veloz, 162 S. W. 377. This amendment,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

of course, does not affect the rules relating to method of briefing assignments; but we will not refuse to consider assignments where the only objection pointed out to the brief is that it fails to refer to the motion for new trial. Chicago, R. I. & G. Ry. Co. v. Pemberton (Sup.) 161 S. W. 3.

[2] The contract having specified a certain number of gallons of gasoline, oil, etc., and having followed that specification in the same sentence with this qualifying clause: "Or such quantity of the above products as second party may require during that time for its own consumption"—we are here concerned with an interpretation of that clause.

Mr. J. E. Pegues was the only witness who testified, and he is a member of the Pegues Mercantile Company. He proved up the contract, which was introduced, and said that up to December 30, 1912, his company had only used 3,173 gallons of Sunburst oil under the contract and 1,060 gallons of gasoline. On that date he wrote the appellant, demanding that it furnish him the balance of the oil and gasoline he claimed was due him under the contract; same being 2,915 gallons of Sunburst oil and 2,756 gallons of gasoline. The Gulf Refining Company refused to furnish same, but continued to supply appellee from its local agent at Crystal City about the same amount of such products as it had been furnishing. Before the contract expired, about two or three weeks, appellee notified the appellant, both by letter to the company and to its local agent at Crystal City, that they would demand the balance coming under said contract, and to ship same. This the appellant refused to do, but did supply such demands as appellee made for its own use and local trade up to the time the contract expired. No demand was made for the naphtha, and no claim is made by reason thereof. Mr. Pegues said he had the oil and gasoline sold before the date on which the contract expired, and was only prevented from making deliveries by reason of the fact that defendant refused to deliver the oil and gasoline; but on cross-examination he admits that he had reference to a telephone conversation with Merchants Wholesale Company at Uvalde, Tex., who called him up and told him they would take all the gasoline and oil he had on hand, "provided my price was right." "No; they did not state how many gallons or how much oil or gasoline they would take, nor was any price agreed upon or mentioned; they merely saying they would take all I had, provided my price was right." "Between January 1 and 15, 1913, I got oil and gasoline from the local agent of the defendant, for my local trade, some ten times, and got in all about 20 barrels from the defendant's agent during the last two weeks of the life of the contract." The average amount of gasoline and oil consumed by appellee from January 1, 1912, to December 30, 1912, was 21 barrels per month, and this included what appellees bought from the Texas

Company. The witness says that, if the defendant had delivered this oil, he intended to have sold it on the market, and made a profit on it. The statement of facts says that the witness made proof that there was a rise in the market price of oil and gasoline to such an extent that on December 30, 1912, and up to January 15, 1913, the difference between the contract price and such market price on the unfurnished oil and gasoline would amount to $197.69. This witness further says: "No; we do not hold ourselves out to the public as a wholesale house. Fully nine-tenths of our business is retail, supplying our local trade." It is admitted that the witness and local agent of appellant knew at the time the contract was entered into that appellee was engaged in a retail business, and that the contract was to supply the local trade, and that appellee desired the products for no other purpose than their local trade.

There are two assignments of error, the first that the verdict of the jury is contrary to the overwhelming evidence, and the second that the court erred in overruling defendant's motion for an instructed verdict. These assignments will be treated together, for both of them raise the question that under the qualifying clause in the contract the defendant below could not be required to furnish more gasoline and oil than was reasonably necessary during the life of the contract, and that the mercantile company could not demand same simply to sell as a speculation to dealers outside of its local trade.

When a contract such as this is made for a certain number of gallons, "or such quantity of the above products as second party may require during that time for its own consumption," what construction will be placed upon the qualifying clause, and what effect does it have upon the mentioning of a certain amount? These are the matters we are called upon to investigate. This construction has been made in a number of cases which we shall notice.

In Loeb v. Winnsboro Cotton Oil Co., 93 S. W. 515, a contract was made for the sale of cotton linters, stipulating that the seller confirmed the sale to the buyer of "the season's output of linters, estimated at 200 to 250 bales." It was held in that case that the contract was for the output, regardless of the number. Chief Justice Rainey held that the output there governed, regardless of the number of bales, and the Supreme Court denied a writ of error.

In Laclede Construction Co. v. T. J. Moss Tie Co., 185 Mo. 25, 84 S. W. 76, there was a contract to furnish 1,000,000 ties, or so many as the railway company might need. The court held that this was binding only in so far as the company needed ties, and, if the road was not built at all, the company was not bound to take any ties. In short, the needs should govern the specification as to numbers.

The United States Supreme Court held, in

Brawley v. U. S., 96 U. S. 168, 174, 24 L. Ed. 622, that, where a wood contract stated that 880 cords of wood shall be delivered, more or less, as shall be determined to be necessary by the post commander, the quantity designated is to be regarded as merely an estimate of what shall be necessary, to be determined by the post commander.

In the case of Moore v. Paris Oil & Cotton Co., 29 S. W. 821, Moore made a contract with the Oil Mill Company whereby it was to furnish "sufficient hulls and meal to feed 1,000 head of cattle," subject to certain conditions. Moore did not furnish any cattle to be fed as agreed, nor did he desire the feed for the purpose of feeding cattle. But, as hulls had advanced in price, he desired same for speculation. The trial court denied a recovery, Moore appealed, the case was affirmed, and the Supreme Court denied a writ of error.

A case very similar to this one came before the Dallas Court of Civil Appeals in Cullinan v. Standard Light & Power Co., 65 S. W. 689. A contract was there made to sell oil to the company during a certain period as it might need same as fuel oil in the operation of its plant, at a fixed price per barrel, and defendant (the company) ordered and obtained oil not for use in its plant, and sold the same at an advance over the contract price. The court held that Cullinan could recover the profits so made by the company.

A Kentucky case on this point is Hettiger v. Davenport Malt & Grain Co., 145 Ky. 39, 139 S. W. 1072. The brewery contracted for 6,000 bushels of malt to be delivered as needed, and an option was given to get 2,000 bushels more if needed in the business at the same rate. The market advanced, and, when it was not shown that the brewery needed the malt, they could not claim the additional amount in order to sell the malt at a profit. The court says that "needed" was not used in the sense of a "desired" or "wanted," but meant such as was required for the brewery.

It is not contended in this case that the Pegues Mercantile Company wanted this gasoline and oil in their regular retail business; but they claim they had a sale made to a Uvalde wholesale house of the entire quantity. The facts do not bear this out, for there is a total absence of anything which would show a sale at a certain price. The wholesale company told Mr. Pegues they would take all he had on hand, if his price was right. What his price was has not been shown, nor has it been shown that his price would have been accepted. The market price was not shown, so far as the record is concerned. It is nowhere shown that a price was agreed on between Pegues and the Uvalde wholesale house. He probably had his price at which he would sell; but this might not suit the other party. They might not consider his "price right."

Then the evidence fails to show that the Pegues Mercantile Company required the balance of the oil and gasoline mentioned in the contract for its own consumption.

What we have said makes it necessary for us to sustain the assignments, and the judgment is reversed and here rendered in favor of the appellant.

Reversed and rendered.