No.——

First Circuit

——

HAZLEHURST OIL MILL & FERTILIZER
CO. v. ·FORNEA

——

(June 12, 1928.   Opinion and Decree.)
(June 30, 1928.   Rehearing Refused.)

——

(*Syllabus by the Editor*)

**1.  Louisiana Digest—Fraud—Par. 10.**
Under the averment of false representa-
tions during the making of a written
contract by erasing printed words and
adding written words, parol evidence,
whether explanatory or contradictory
thereto, is admissible.

**2.  Louisianaı Digest—Fraud—Par. 10.**
The allegation "to defraud respondent out
of this loading charge" is sufficient to
permit the introduction of parol evi-
dence on the question.  Civil Code, Art.
1857.

**3.  Louisiana Digest—Obligations—Par. 90**
Where parol evidence as to what was
meant by different terms in a written
contract is uncontradicted it must be
considered the truth.

Appeal from the Parish of Washington.
Hon. Prentiss Carter, Judge.

Action by Hazlehurst Oil Mill & Fer-
tilizer Co. against Robert D. Fornea.

There was judgment for defendant and
plaintiff appealed.

Judgment affirmed.

Ott & Johnson, of Franklinton, attorneys
for plaintiff, appellant.

Bascom D. Talley, of Bogalusa, attorney
for defendant, appellee.

MOUTON, J.   Defendant Fornea entered
into a written contract with V. H. Robinson,
agent of plaintiff, August 23, 1926, by virtue
of which he agreed to purchase cotton
seed for plaintiff company between the
date of the contract, and May 1, 1927.
Under the terms of the agreement plain-
tiff was to furnish the money the defendant
was to have in trust as agent of the plain-
tiff, to effect these purchases, these ad-
vances being at all times subject to the
order of plaintiff.  As was agreed, defend-
ant, it is shown, bought all the seed he
could purchase and shipped them as agreed.
The vital difference between the parties is
as to the amount defendant was entitled
to charge under the terms of the contract
which is annexed to plaintiff's petition.

The part of the contract which is perti-
nent to the issues presented for solution,
reads as follows:

"The said Oil Mill hereby agrees to pay
the said R. D. Fornea for his services in
purchasing seed as aforesaid $3.00 per ton
for each and every ton purchased by him
for it as aforesaid and shipped to it."

The above appears in printed form, but
after the words "shipped to it," above re-
produced follow these words written in
pencil: "Loaded in cars at Varnado, La."
After stating in printed form that the
contract shall remain in force from August
23rd, its date to May 1, 1927, as herein-
above stated in line 7 of the printed agree-
ment appear these words:

"All settlements shall be based on mill
weights with an allowance for normal loss
not to exceed 1½ per cent."

Pencil marks are drawn across the
words: "With an allowance for normal
loss of not to exceed 1½ per cent," which
appear in said line 7 of the contract.  Ref-

erence is made to the obliteration of the words mentioned because they play a part in the disputed questions which have arisen between the litigants herein. The first question presented for decision is as to whether defendant in his answer has made the required legal allegations to permit the introduction of parol evidence to contradict or explain the terms of the contract in question. Objection to the admissibility of parol evidence which was admitted under the ruling of the Court, was in reference to the obliteration of the words above referred to, also as to the real agreement which had been entered into for the expenses that were expected to be incurred for "Loading the cars at Varnado, La.," as per the words in pencil which had been inserted by Robinson, agent of plaintiff, in the contract, and as to the mill weights which plaintiff had really agreed to accept under the agreement. The question presented is therefore as to whether the parol proof which was introduced by defendant on the foregoing propositions, was legally admissible under the pleadings.

In referring to the words, "with allowance for normal loss not to exceed 1½ per cent," which were obliterated with a pencil mark drawn across, respondent in his answer avers that they were struck out under the false representation that the company only expected to get the actual seed bought, etc. In the article preceding the allegation made as aforesaid, that these words had been struck out under false representation, defendant alleges that when they were marked out, the representative of the plaintiff company explained that he only "expected an honest accounting of all seed purchased, that there was always more or less shrinkage and loss of seed." These two articles of the answer must be construed together, and under the averment of the false representations thus charged to the agent of plaintiff com-

pany, parol evidence, whether explanatory or contradictory thereto, was admissible.

The next proposition is as to whether under the averments of the answer, defendant could offer parol proof to show what plaintiff's agent said when he added to the printed lines of the contract in pencil the words. "Loaded in cars at Varnado, La." In the answer, respondent in referring to the words so added by the agent alleges that he asked the agent what was the meaning of the words; that the agent said they meant that respondent, as the agent of the plaintiff had to load the seed, but at the expense of plaintiff, and which is now attempting "to defraud respondent out of this loading charge."

It is true that the allegation of fraud may have been made more explicitly, but we think that the allegation that plaintiff was now attempting to defraud him of this loading charge which bore on a material part of the contract was sufficiently broad to permit the introduction of parol evidence on the question. C. C. 1857. Was there not also some ambiguity in the words: "Loaded in cars at Varnado, La."? Even when considered with the preceding words of the contract where it is said that plaintiff "agrees to pay said Fornea for his services in purchasing seed as aforesaid $3.00 per ton for each and every ton purchased by him for it as aforesaid and shipped it."

It will be noted from the language used in the contract that defendant was to receive $3.00 per ton for his services in purchasing the seed and in shipping it to plaintiff. These were the services which were expected of him under the terms of the agreement. As he had to ship the seeds it must naturally be implied that he had to see to the loading for shipment. The words inserted by the agent further stipulated that the seeds were to be loaded

at Varnado, La. Must it be concluded because of this stipulation, that the obligation was imposed upon respondent not only to load the seeds at the point designated, but that he had also to incur personally, the expenses necessary for the loading? It is not surprising that defendant alleges that when these words were thus inserted in the agreement he asked what they meant, and that the agent gave the explanation hereinabove referred to.

The meaning of the words used, seem to us somewhat obscure, ambiguous, and by themselves, not susceptible of a satisfactory explanation. In the case of Adeline Sugar Factory vs. Evangeline Oil Company, 121 La. 961, 46 So. 935, while passing on the rules of evidence governing the explanation of obscurities which may lurk in the terms of a written contract, the Court quoted favorably from 185 Mo. 25, 84 S. W. 76, in which that Court said:

"The writing or contract should be read in the light of surrounding circumstances, in order the more perfectly to understand and explain the intent and meaning of the parties; that the object of interpretation always is or should be to reach the actual intention of the parties."

This rule of evidence was enunciated in the foregoing quotation, the Court in Adeline Sugar Factory Co. vs. Evangeline Oil Co., 121 La. 961, 46 So. 933, said, was expressive of the view taken on that subject in several decisions of the Supreme Court of this State which are therein referred to. See also Mixon vs. St. Paul Fire & Marine Ins. Co., 147 La. 302, 84 So. 790. Parol proof was, we find, admissible to clear up the ambiguity in the contract to which we have hereinabove referred, but if not for that purpose, it was properly allowed under the averment of the answer charging plaintiff with attempting to defraud respondent on the loading charge.

In the petition plaintiff averred the settlement for the seed bought by respondent was to be made according to "mill weight of such seed when received at the mill of your petitioner." In line 7 of the contract which was intended to cover this subject, what is said is this: "All settlements shall be based on mill weights." It is not said here that the weights mentioned were to be those of plaintiff's mill. The fact is, that acting under the direction of plaintiff's agent, respondent made regular daily reports of the weights of the seeds that had been taken at respondent's own mill where he had made the purchases for plaintiff. These reports were sent in to plaintiff company and were not objected to at the time they were returned. This clearly shows that respondent so construed the contract and did not understand it to mean that the only weights which would be acceptable were to be those of plaintiff's mill.

This course of dealing between the parties as is disclosed by the record, makes it quite evident that such had been the understanding of the agent and respondent when the contract was entered into. It shows at least that in this respect, the contract was ambiguous, and parol proof was admissible to establish the true intent of the parties. In the 11th article of respondent's answer, he avers that he had been instructed by plaintiff's representative to send in his mill weights every day; that they were accordingly sent in, and that it was on this representation of the agent that the agency contract was signed.

The proof sustains this allegation, and also the explanation given by him of the other parts of the contract above discussed. These defenses were urged in the answer of defendant which was filed in July, 1927, and the case was tried in October of the same year. Robinson, the agent who made

the contract for the plaintiff, was, as appears from the record, still an employee of plaintiff, but he did not appear as a witness to meet or refute the charges made in the answer of respondent. The version of what occurred at the confection of the contract as was given by respondent, is not contradicted by any witness, nor do we find in the record any facts or circumstances which indicate that he has deviated from the truth in any of his statements in reference thereto.

Respondent claims in reconvention the sum of $75.00 which he alleges he is entitled to recover against plaintiff being the difference between the amount of money advanced to him by plaintiff company, and the amount of money expended by him for its account. It is shown that respondent acting in obedience to instructions from plaintiff conveyed to him by telegram, that he discontinued to ship seeds to plaintiff from September 28th up to November 2nd, for a period of over thirty days. The seeds were green at that time, and lost considerable weight by shrinkage, which no doubt, caused the difference in weight of which plaintiff complains. This loss is certainly not imputable to defendant. These seeds had to be stored by him during the period above referred to, and which the evidence shows had to be stirred while they were so kept.

The evidence shows that defendant expended $150.00 to stir these seeds, and which was done in the interest of the plaintiff; that it also cost him $10.00 per car to load eight cars making $80.00 for this item. The record shows that defendant shipped to plaintiff all the seed that he bought with the money that had been advanced to him. He actually paid out the sum of $4588.54 for the seeds, on which his commission according to the weights he sent in, and which we hold was the

**50 La. App.**

proper basis to adopt, amounted to $564.00, which with the items of $150.00 and $80.00 mentioned above, amounted to a total of $5,306.50, which deducted from the above total, leaves a balance of $75.00 respondent claims in reconvention.

This suit is in the nature of a demand for an accounting by defendant, and the counter claims which he makes should be considered as in settlement of the advances made. The District Judge rendered judgment rejecting plaintiff's suit, and the claim in reconvention. Whether the demand of defendant was legally one in reconvention or in settlement of account, is immaterial, and of no importance to the decision of the rights involved, which, we find, were properly adjusted by the judgment appealed from, and which is therefore affirmed with costs.